UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


CHRISTOPHER SERAFIN,

            Plaintiff,

       v.

THE WILLIAM C. EARHART COMPANY,
INC., CASCADE GENERAL, INC.,
LABORER'S LOCAL UNION 296,
OREGON LABORERS'-EMPLOYERS
PENSION PLAN TRUST,

            Defendants.

Case No. 3:18-cv-00192-YY

OPINION AND ORDER


YOU, Magistrate Judge:

      Plaintiff Christopher Serafin ("Serafin") has brought an action against defendants—The

William C. Earhart Company, Inc. ("Earhart"), Cascade General, Inc. ("Cascade General"),

Laborers Local 737 ("Local 737"), as successor in interest to Laborers Local 296 ("Local 296"),

and Oregon Laborers-Employers Pension Trust Fund ("OLEPTF")—alleging several claims

under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et

seq.*, as well as common law fraud and negligence claims. Second Am. Compl. ("SAC"), ECF

#71.

      All defendants have filed motions to dismiss for failure to state a claim under Federal

Rule of Civil Procedure 12(b)(6). ECF ##72-75. Given the exhaustive briefing by the parties,

the court finds these motions suitable for decision without oral argument pursuant to L.R. 7-1(d)(1). For the reasons set forth below, defendants' motions to dismiss are GRANTED.[1]

## BACKGROUND

From 1993 to 2004, Serafin was a member of Local 296, the predecessor to Local 737, and worked as a laborer for Cascade General. SAC ¶ 19, ECF #71. The applicable collective bargaining agreement required Cascade General to make contributions to Serafin's group pension plan, including disability benefits, based on the number of hours Serafin worked. *Id.* at ¶¶ 48-49. OLEPTF "provides disability benefits to participants who meet certain conditions." Op. and Award 6, ECF #1-4. "A board of six trustees appointed by [Local 737] and employers oversees the operations of the trust." *Id.* at 5. Earhart handles "the day-to-day administration of the trust[.]" *Id.*; SAC ¶ 14, ECF #71.

Serafin injured his right hand at the workplace in February 2002, and again in December 2002, but he was able to return to work after his doctor placed him on limited periods of light duty restrictions. SAC ¶¶ 23-24, ECF #71. In August 2003, Serafin was struck by a car from behind while riding his bicycle home from work. *Id.* at ¶ 25. The accident reaggravated his right-hand injury, and he was placed on periods of light duty and lifting restrictions. *Id.* On July 8, 2004, Serafin was given a termination notice that indicated he needed to obtain a full medical release before he could be recalled for work. *Id.* at ¶ 27.

Serafin applied for Social Security disability insurance benefits in 2005. *Id.* at ¶ 31. In January 2008, the Social Security Administration issued a decision finding Serafin disabled as of August 1, 2005. *Id.* at ¶¶ 31, 33; Op. and Award 7, ECF #1-4.

---

[1] All parties have consented to allow a magistrate judge to enter final orders and judgment in this case in accordance with F.R.C.P. 73 and 28 U.S.C. § 636(c). Notice of Consent, ECF #87.

In February 2008, Serafin submitted a claim to OLEPTF for disability benefits under his pension plan. SAC ¶ 29, ECF #71; Op and Award 4, ECF #1-4. On June 10, 2008, OLEPTF awarded Serafin disability benefits effective April 1, 2008. Op. and Award 8, ECF #1-4. Serafin appealed by letter dated June 24, 2008, informing the plan administrator, Earhart, that he disagreed with the April 1, 2008 effective date. *Id.*; SAC ¶ 13, ECF #71. Serafin argued that because OLEPTF had accepted the Social Security disability determination as proof of his disability, it should have awarded him disability benefits as of August 1, 2005. Op. and Award 8, ECF #1-4; SAC ¶ 30, ECF #71.

OLEPTF issued a written denial of Serafin's appeal on October 10, 2008. SAC ¶ 13, ECF #71. OLEPTF explained that under the terms of the pension plan, disability benefits begin on the month after the claimant establishes disability to the satisfaction of the trustees. Op. and Award 8, ECF #1-4. Because Serafin provided the information establishing his disability on March 25, 2008, his disability benefits became effective on April 1, 2008. *Id.*

On November 26, 2008, Serafin's attorney sent Earhart a letter challenging OLEPTF's decision and requesting arbitration. *Id.* An arbitration hearing was held on June 30, 2009. *Id.* at 3; SAC ¶ 13, ECF #71. In an Opinion and Award issued on August 10, 2009, the arbitrator found that OLEPTF did not act arbitrarily in exercising its discretion to set Serafin's disability eligibility date as April 1, 2008, and not August 1, 2005. Op. and Award 15, ECF #1-4.

At some point in 2009, Serafin discovered that Cascade General underreported his hours used to calculate his benefits under the pension plan. SAC ¶ 34, ECF #71. On September 22, 2009, Serafin and Local 737 submitted additional records to Earhart for a recalculation of Serafin's benefits. *Id.* at ¶ 73. Serafin's benefits amount was increased based on the higher hours reflected in those documents. *Id.* Serafin also began settlement negotiations with

OLEPTF and Earhart on September 22, 2009. *Id.* On September 18, 2013, upon reviewing the latest settlement offer from OLEPTF and Earhart, Serafin "noticed that the hours recorded on his paystubs did not match the hours reported by [Local 737] to Earhart," and objected to the fact that his hours had not been properly recalculated. *Id.* at ¶ 74. After settlement negotiations broke down in January 2018, Serafin filed this action. *Id.* at ¶¶ 43-44.

## DISCUSSION

### I. Relevant Law Regarding Rule 12(b)(6)

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). A Rule 12(b)(6) motion tests whether there is a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). To survive a Rule 12(b)(6) motion, "the complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

In evaluating a motion to dismiss, the court must accept "all allegations of material fact as true and construe them in the light most favorable to the non-moving party." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In addition to the allegations in the complaint, the court may also consider documents whose authenticity no party questions which are attached to or incorporated by reference into the complaint. *Knievel v. ESPN*, 393 F.3d 1068,

1076 (9th Cir. 2005). The court need not accept as true allegations in the complaint that contradict these sources. *Lazy Y Ranch, Ltd., v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Defendants contend that plaintiff's claims are barred by the statute of limitations. "If the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss" pursuant to Rule 12(b)(6). *Jablon v. Dean Witter Co.*, 614 F.2d 677, 682 (9th Cir. 1980). However, "[w]hen a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.* (citation omitted). "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). "For this reason, [the Ninth Circuit has] reversed dismissals where the applicability of the equitable tolling doctrine depended upon factual questions not clearly resolved in the pleadings. *Id.* (citing *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1199 (9th Cir. 1988); *Donoghue v. Orange County,* 848 F.2d 926, 931 (9th Cir. 1987)). "Similarly, [a motion to dismiss cannot be granted] if the factual and legal issues are not sufficiently clear to permit [the court] to determine with certainty whether the doctrine could be successfully invoked." *Id.*

## II.    Equitable Tolling

As discussed more thoroughly below, the majority of Serafin's claims for relief are time-barred. Recognizing that he has waited too long to bring this action, Serafin argues the statute of limitations should be equitably tolled for two reasons. The court analyzes those arguments before discussing whether the statute of limitations bars Serafin's individual claims.

Equitable tolling is allowed "only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see also Utecht v. Diamond Lake, Inc.,* No. CV 16-118 (JRT/FLN), 2017 WL 6734178, at *5 (D. Minn. Dec. 29, 2017) (applying the *Menominee* factors to an ERISA claim). "The doctrine of equitable tolling is applied sparingly." *Inter-Modal Rail Employees Ass'n v. Burlington N. & Santa Fe Ry. Co.*, 210 F.3d 383 (9th Cir. 2000) (citation omitted).

Serafin first asserts that his participation in settlement negotiations with OLEPTF and Earhart from 2009 to 2018 serves as a basis for equitably tolling the statute of limitations. Pl.'s Resp. 6, ECF #77; SAC ¶¶ 63, 87, 96, 107, ECF #71. "As a general rule, a defendant will be estopped from setting up a statute-of-limitations defense when its own prior representations or conduct have caused the plaintiff to run afoul of the statute and it is equitable to hold the defendant responsible for that result." *Gordon v. Deloitte & Touche, LLP Grp. Long Term Disability Plan*, 749 F.3d 746, 752 (9th Cir. 2014) (quotation omitted). Thus, "the Supreme Court has allowed equitable tolling when . . . a claimant was tricked by an adversary into letting a deadline expire[.]" *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998) (citing *Scholar v. Pacific Bell*, 963 F.2d 264, 267-68 (9th Cir. 1992)).

Plaintiff cites *Atkins v. Union Pac. R. Co.*, 753 F.2d 776 (9th Cir. 1985), in support of his argument. There, the court held that "equitable estoppel will not apply . . . unless the plaintiff shows either "(1) an affirmative statement that the statutory period to bring the action was longer than it actually was; (2) promises to make a better settlement of the claim if plaintiff did not bring the threatened suit; or (3) similar representations or conduct on the part of the defendants."

*Id.* at 777 (citing *Burke v. Gateway Clipper*, 441 F.2d 946, 949 (3d Cir. 1971)).  Serafin has not

alleged that any of those factors exist in this case.  In fact, Serafin alleges that the settlement

negotiations were conducted in "good faith."  SAC ¶¶ 63, 73-74, 86-87, 97, 102, 107, ECF #71.

Thus, equitable estoppel does not apply.

Serafin next contends that equity demands tolling because he is a "Polish immigrant who

speaks broken English."  *Id.* at ¶¶ 18, 98, 102; Pl.'s Resp. 5, ECF #77.  Serafin alleges:

> [A]s a reasonably prudent, [P]olish immigrant with English as a second language,
> equity suggests that an immigrant might be less appraised of the legal
> consequences of waiting to pursue his rights than someone who is born here and
> speaks English fluently.  In spite of Plaintiff's unfamiliarity with our legal system,
> when settlement negotiations broke down, the Plaintiff immediately filed this
> action pro-se in a good faith attempt to protect his rights.

SAC ¶ 98, 102.

In support, Serafin cites a habeas case, *Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006).

However, in *Mendoza*, the Ninth Circuit expressly "rejected a per se rule that a petitioner's

language limitations can justify equitable tolling," holding instead that "equitable tolling may be

justified if language barriers *actually* prevent timely filing."  *Id.* at 1069 (emphasis added).

Serafin has not alleged that his "broken English" actually prevented him from timely filing this

complaint.  Instead, the complaint alleges that Serafin filed this suit in January 2018, after

OLEPTF gave him a final settlement offer and said it would negotiate no further.  SAC ¶¶ 43-44,

98, 102, ECF #71.  Moreover, it is evident that Serafin's language barrier has not prevented him

from utilizing the legal system:  he was able to apply for and obtain Social Security benefits;

obtain disability benefits from OLEPTF, and appeal its decision denying retroactive benefits;

participate in settlement negotiations with OLEPTF and Earhart from 2009 to 2018; and file the

instant action *pro se*.  *Id.* at ¶¶ 31, 33, 42, 44, 73, 86, 94.  Even viewing Serafin's complaint with

the "required liberality," it is "beyond doubt" that his limited English was not an extraordinary

circumstance such that the statute of limitations should equitably tolled. *Jablon*, 614 F.2d at 682; *Supermail*, 68 F.3d at 1207; *Menominee*, 136 S. Ct. at 755.

## III. Count 1

In Count 1, Serafin contends that the application and interpretation of the pension plan was unconscionable in violation of 29 U.S.C. §§ 1109, 1132(a), and 1140. SAC ¶ 54, ECF #71.

### A. 29 U.S.C. § 1109

29 U.S.C. § 1109(a) establishes liability for the breach of fiduciary duty by fiduciaries of an ERISA plan. No claim pursuant to 29 U.S.C. § 1109 "may be commenced . . . after the earlier of . . . (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation," or "(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation," except that in the case of fraud or concealment, "not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113.

Serafin alleges that OLEPTF "engaged in a discriminatory scheme compromised of various discriminatory actions, the totality of which resulted in the deprivation of [his] ERISA benefits." SAC ¶ 56, ECF #71. More specifically, he alleges that OLEPTF "deprived" him of his ERISA benefits by "drafting unconscionable pension plan language designed and interpreted to deprive [him] of retroactive disability benefits." *Id.*

OLEPTF denied Serafin's request for retroactive disability benefits in writing on October 10, 2008. *Id.* at ¶¶ 29-30.[2] Thus, that is the last date on which OLEPTF "designed and

---

[2] Serafin alleges his claim for retroactive disability benefits was denied in either March or June 2008. SAC ¶¶ 13, 29, ECF #71. The arbitration Opinion and Award attached to Serafin's initial

interpreted" the allegedly "unconscionable pension plan language" as the basis for denying Serafin retroactive benefits. Accordingly, OLEPTF's alleged breach, as well as Serafin's knowledge of that breach, occurred no later than October 10, 2008. Even assuming the six-year statute of limitations applies (and it does not due to Serafin's "actual knowledge" of the alleged breach or violation), Serafin needed to bring his breach of fiduciary duty claim against OLEPTF by October 2014 for it to be timely. 29 U.S.C. § 1113. Serafin filed this lawsuit on January 30, 2018—over three years after the longest statute of limitations theoretically available to him had run. *See* Compl., ECF #1.

Recognizing that his claim is untimely, Serafin attempts to recast OLEPTF's act of executing the allegedly discriminatory plan terms as a failure to correct those plan terms. Pl.'s Resp. 3-4, ECF #77. Thus, argues Serafin, § 1113(1)(B)'s limitations period for an "omission" applies, and the statute of limitations has not yet accrued because "[t]he latest date on which [OLEPTF] could have cured the breach or violation is the present time." *Id.* at 3.

However, as observed by another district court:

> The beginning date for the statutory period regarding omissions is harder to pin down, because it is measured not by the date of the omission, but by the "latest date on which the fiduciary could have cured the breach." For this reason, many plaintiffs attempt to strategically recharacterize their claim from one of affirmative act to one of omission. *The courts generally resist such efforts.*

---

complaint, however, details that on June 10, 2008, OLEPTF notified Serafin that his application for disability benefits was approved effective April 1, 2008. Op. and Award 8, ECF #1-4; *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[A] court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss[.]") (citation omitted). On June 24, 2008, Serafin notified Earhart that he disagreed with OLEPTF's decision not to award him retroactive disability benefits beginning August 1, 2005—the date the Social Security Administration found Serafin became disabled. *Id.* In an October 10, 2008 letter, OLEPTF notified Serafin his appeal for retroactive benefits was denied under the terms of the plan. *Id.* Thus, it appears that Serafin's claim was in fact finally denied by OLEPTF in October 2008, not March or June 2008 as alleged. Nonetheless, whether the plan language was in effect in March or June or October 2008, is of no consequence because the statute of limitations has long expired.

*Ellis v. Rycenga Homes, Inc.*, 484 F. Supp. 2d 694, 713-14 (W.D. Mich. 2007) (emphasis added).

Here, Serafin alleges that OLEPTF engaged in affirmative acts, not ones of omission. *See, e.g.*, SAC ¶ 30 (alleging OLEPTF "*denied* his claim for retroactive disability benefits [by] *interpreting* language in the plan"), ¶ 57 (claiming OLEPTF "*drafted* language that could be used to delay approval of disability claims") (emphasis added).  It is OLEPTF's affirmative acts of drafting and interpreting the pension plan that form the crux of Serafin's claim; Serafin does not allege that OLEPTF omitted or failed to draft and interpret discriminatory plan language in denying his appeal for retroactive benefits.  *See Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir. 1990) (finding statute of limitations in breach of fiduciary duty claim based on offending language in an agreement was triggered by the execution of the agreement). Therefore, the statutory limitations period for omissions does not apply.

Nor does the Ninth Circuit recognize the theory that there has been a continuing violation when actual knowledge of the purported breach is apparent from the complaint, as it is here.  *See Pisciotta v. Teledyne Indus.*, Inc., 91 F.3d 1326, 1332 (9th Cir. 1996) (noting "the continuing violation theory could not be applied because it would read the 'actual knowledge' requirement out of the statute.").  As noted, Serafin had actual knowledge of the plan terms as of at least October 10, 2008.  SAC ¶ 30, ECF #71; ECF #1-4, at 8.  Accordingly, Serafin's breach of fiduciary duty claim against OLEPTF is time-barred.

Serafin requests leave to amend his complaint to allege that OLEPTF's attorneys "asserted at the arbitration hearing that all of [Serafin]'s reported hours were correct and verified."  Pl.'s Resp. 4, ECF #77.  The arbitration hearing occurred on June 30, 2009.  Op. and Award 3, ECF #1-4.  Serafin argues these facts show "concealment" for purposes of establishing the "fraud or concealment" exception to the statute of limitations.  *Id.*; 29 U.S.C. § 1113.

"The 'fraud or concealment' exception tolls the statute of limitations only 'until the plaintiff in the exercise of reasonable diligence discovered or should have discovered the alleged fraud or concealment.'" *DeFazio v. Hollister, Inc.*, 854 F. Supp. 2d 770, 783 (E.D. Cal. 2012) (quoting *J. Geils Band Emp. Ben. Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1252 (1st Cir. 1996)), *aff'd sub nom. DeFazio v. Hollister Employee Share Ownership Tr.*, 612 F. App'x 439 (9th Cir. 2015); *see also* 29 U.S.C. § 1113. Serafin alleges that on September 22, 2009, he became aware that the hours used to calculate his benefits were incorrect and submitted new documents to Earhart for recalculation. SAC ¶ 72, ECF #71. As such, Serafin discovered the falsity of the attorneys' June 2009 statements on September 22, 2009. Thus, even assuming the attorneys' statements in June 2009 amount to "fraud or concealment," Serafin had until September 22, 2015, to timely fail his claim, 29 U.S.C. § 1113, but missed that deadline by over two years. Because Serafin's proposed amendment would be futile, the request to amend the complaint is denied.

## B. 29 U.S.C. § 1132

"[B]ecause the civil enforcement section of ERISA, 29 U.S.C. § 1132, does not provide its own statute of limitation, courts must apply the most analogous statute of limitation under state law." *Stone v. Travelers Corp.*, 58 F.3d 434, 438 (9th Cir. 1995) (citations omitted). For claims to recover benefits that are due under the terms of a pension plan, "the most analogous state statute is Oregon's six-year statute of limitations for breach of contract claims." *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1031 (9th Cir. 2006) (citing O.R.S. § 12.080(1)).

As discussed, OLEPTF denied Serafin's claim for retroactive benefits on October 10, 2008. SAC ¶ 13, ECF #71. Thus, Serafin's claim filed in January 2018 is outside the applicable six-year statute of limitations.

To the extent Serafin alleges OLEPTF violated 29 U.S.C. § 1132(c) by failing to comply with a request for benefits information within 30 days, that claim is also time-barred.[3] For a claim brought under § 1132(c), the applicable statute of limitations is the most analogous statute of limitations under state law that relates to "a remedy sought by an individual as compensation to address a private wrong." *Stone*, 58 F.3d at 439. Oregon law provides a six-year statute of limitations for an "action upon a liability created by statute, other than a penalty or forfeiture[.]" O.R.S. § 12.080(2). Although Serafin does not indicate when OLEPTF failed to comply with his request for information, he alleges that he was not informed of his pension plan benefits *prior* to his award of Social Security disability benefits in January 2008. SAC ¶¶ 33, 57, ECF #71. Thus, even viewing the facts in the light most favorable to Serafin, the latest that OLEPTF could have failed to furnish him benefits information was in January 2008. Serafin had until January 2014 to file a § 1132(c) claim against OLEPTF, but failed to do so.

**C.      29 U.S.C. §1140**

Finally, Serafin's interference claim brought pursuant to 29 U.S.C. § 1140 is also untimely. The statute of limitations for a § 1140 interference claim borrows the statute of limitations for a state law wrongful termination claim. *Burrey v. Pac. Gas & Elec. Co.*, 159 F.3d 388, 396 (9th Cir. 1998). In Oregon, such a claim "must be commenced within one year after the occurrence of the unlawful employment practice." O.R.S. § 659A.875(1). OLEPTF argues, and Serafin does not dispute, that "adverse action occurred—at the latest—when [Serafin's] claim

---

[3] Although Serafin asserts OLEPTF violated 29 U.S.C. § 1132(c), he only alleges Local 737 and Cascade General failed to provide him with information about his benefits. SAC ¶¶ 54, 57, ECF #71. Serafin does allege elsewhere in the SAC that OLEPTF "failed to send a denial letter within 30 days as required by 29 U.S.C. § 1133," which forms the basis of his claim brought against OLEPTF in Count 5 of the SAC. *Id.* at ¶¶ 29, 104. Granting Serafin leave to amend, however, would be futile because his claim would still be time-barred even if properly pleaded.

was denied by the arbitration decision issued on August 10, 2009." Mot. Dismiss 18, ECF #75; *see also* Op. and Award, ECF #1-4.  Because Serafin brought his § 1140 claim over seven years after the statute of limitations had run, it is time-barred.

## IV.  Count 2

In Count 2, Serafin alleges an "ERISA Fraud" claim, in addition to state common law negligence and fraud claims, against Cascade General and Local 737 for falsifying and underreporting his hours worked to the pension plan.  SAC ¶ 66, ECF #71.  These claims are also time-barred and must be dismissed.

First, the court need not determine if Serafin's common law fraud and negligence claims are preempted by federal law because, even assuming they are not preempted, his state law claims are time-barred.  Under Oregon law, the statute of limitations for fraud claims is two years from when the plaintiff discovered the fraud.  O.R.S. § 12.110(1).  "A fraud is discovered when a plaintiff learns either of the misrepresentation itself or of facts sufficient to excite attention and put the plaintiff on guard or call for an inquiry[.]"  *Bodunov v. Kutsev*, 214 Or. App. 356, 359 (2007) (citation and internal quotation marks omitted).  The same two-year limitations period applies to Serafin's negligence claims, and accrued when Serafin first discovered, or in the exercise of reasonable care should have discovered, the injury.  *Gaston v. Parsons*, 318 Or. 247, 256 (1994); O.R.S. § 12.110(1).  Serafin alleges he discovered the underreporting on September 18, 2013, when he "reviewed his paystubs and realized that they didn't match up with the hours reported to the Pension Plan."  SAC ¶ 86, ECF #71.  Thus, Serafin had until September 18, 2015 to file his common law fraud and negligence claims.  He missed that deadline by over two years, and his claims are therefore time-barred.

Second, Serafin's "ERISA fraud" claim fails to plead facts establishing that Cascade General or Local 737 are fiduciaries that can be held liable for a breach of fiduciary duty under 29 U.S.C. § 1109. ERISA contemplates two types of fiduciaries. A "named fiduciary" is a party that is designated "in the plan instrument," 29 U.S.C. § 1102(a)(2), whereas a "functional fiduciary" is a fiduciary to the extent:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Id.* § 1002(21)(A); *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653 (9th Cir. 2019), *cert. denied*, No. 19-77, 2019 WL 4922669 (U.S. Oct. 7, 2019).

Serafin has not alleged that Cascade General or Local 737 are named fiduciaries. In fact, Serafin concedes that Local 737 is not a fiduciary. Pl.'s Resp. 11, ECF #77 ("Plaintiff is not arguing that the union is a fiduciary."). Serafin asserts that "[t]o the extent Cascade General had a duty to report hours accurately to the plan, it became a plan fiduciary," but fails to allege that Cascade General carries out any of the discretionary or advisory roles belonging to functional fiduciaries. *Id.* at 12; 29 U.S.C. § 1102(21)(A). Instead, citing *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir. 1992), Serafin argues that "non-fiduciaries who participated in a breach of fiduciary duty by a plan sponsor can be jointly and severally liable for breaches of fiduciary duties by plan sponsors." Pl.'s Resp. at 12. The Supreme Court, however, has subsequently made clear that 29 U.S.C. § 1132(a)(3) does not authorize a claim for money damages against non-fiduciaries even if they knowingly participate in a fiduciary's breach of fiduciary duty. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993). The aspect of *Diduck* on

which Serafin relies has not been good law for over 15 years. *Gerosa v. Savasta & Co.*, 329 F.3d 317, 322 (2d Cir. 2003) ("In *Mertens*, the Court rejected the central holding of *Diduck*, finding that non-fiduciaries who knowingly participate in a fiduciary breach cannot be liable for ordinary money damages.") (citations omitted). Because Serafin only seeks money damages, or the functional equivalent of money damages, from Cascade General and Local 737, his "ERISA Fraud" claim must be dismissed for failure to state a claim pursuant to F.R.C.P 12(b)(6).

## V.     Count 3

In Count 3, Serafin alleges OLEPTF and Earhart breached a fiduciary duty in violation of 29 U.S.C. § 1109 "by failing to verify the hours reported to it by" Local 737 and Cascade General. SAC ¶ 90, ECF #71. Serafin contends that once he submitted documents showing his hours were incorrectly reported, OLEPTF and Earhart "had a fiduciary duty to conduct an audit of Cascade General . . . and to investigate whether [it] had been under-reporting the working hours of its employees." *Id.* at ¶ 93.

### A.     OLEPTF

As a preliminary matter, Serafin's assertion that § 1113's six-year "fraud or concealment" exception to the statute of limitations applies to his breach of fiduciary duty claim is unavailing. "The fraud or concealment exception applies only when an ERISA fiduciary either misrepresents the significance of facts the beneficiary is aware of (fraud) or hides facts so that the beneficiary never becomes aware of them (concealment)." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1401 (9th Cir. 1995) (citation and internal quotations and ellipsis omitted). Serafin's allegation that OLEPTF's attorneys misrepresented the accuracy of his pension plan hours at the June 2008 arbitration hearing does not establish that OLEPTF concealed information relating to whether it had ever conducted an audit of Cascade General following Serafin's

submission of new documents in September 2009. Pl.'s Resp. 4, ECF #77; SAC ¶ 93, ECF #71.

Serafin's allegation of deception on the part of OLEPTF is defeated by his own admission that he

"does not have any information about whether any audits were conducted other than the fact that

discrepancies still exist." Pl.'s Resp. 8, ECF #77. Because "passive concealment [is]

insufficient to toll the statute of limitations," an "ERISA fiduciary's mere failure to disclose

material information thus does not merit tolling under § 1113." *DeFazio*, 854 F. Supp. 2d at 783

(citing *Barker*, 64 F.3d at 1401, 1403). Accordingly, the six-year "fraud or concealment"

exception to the statute of limitations does not apply and granting Serafin leave to amend so that

he can plead immaterial allegations would be futile.

As noted previously, a breach of fiduciary duty claim premised on a defendant-

fiduciary's omission, such as OLEPTF's alleged failure to audit Cascade General's payroll

records, must be brought within six years after "the latest date on which the fiduciary could have

cured the breach or violation." 29 U.S.C. § 1113. Thus, the date on which OLEPTF could have

cured the alleged breach through an ERISA collection action against the employer or union

triggers the running of the statute of limitations. Also, as noted, "[t]he ERISA provision

authorizing a civil action by a plan fiduciary, 29 U.S.C. § 1132, does not contain a statute of

limitations." *Pierce Cty. Hotel Employees & Rest. Employees Health Tr. v. Elks Lodge, B.P.O.E.*

*No. 1450*, 827 F.2d 1324, 1328 (9th Cir. 1987). Rather, courts must "borrow the forum state's

statute of limitations governing breach of contract claims for ERISA collection actions[.]" *Id.*

(citation omitted). Oregon's statute of limitations for breach of contract is six years. O.R.S.

§ 12.080(1).

Here, Serafin stopped working for Cascade General in July 2004. SAC ¶ 27, ECF #71.

As such, OLEPTF had six years from July 2004 to bring an ERISA collection action against

Cascade General or Local 737 to recover any unpaid contributions resulting from their underreporting of Serafin's hours. Thus, the last day on which OLEPTF could have cured any discrepancies that an audit might have revealed was in July 2010. Accordingly, Serafin had until July 2016 to bring his claim for breach of a fiduciary duty arising from OLEPTF's alleged failure to audit. 29 U.S.C. § 1113. Because Serafin did not file the instant action until January 2018, his claim is untimely.

Even if OLEPTF's failure to audit is analyzed as an action constituting a breach or violation, as opposed to an omission, Serafin's claim is still time-barred. The six-year statute of limitations accrued at the time of OLEPTF's breach or violation, and the three-year limitations period accrued at the time that Serafin obtained "actual knowledge" of OLEPTF's failure to audit. *Id.* According to Serafin, OLEPTF's duty to audit arose on September 22, 2009, when he submitted timesheets demonstrating his pension hours were miscalculated. SAC ¶ 93, ECF #71. Assuming OLEPTF did not conduct an audit, and further assuming that failure to conduct an audit is an act that constitutes a breach or violation, the six-year statute of limitations expired on, or shortly after, September 22, 2015. 29 U.S.C. § 1113(1)(A). That does not end the analysis, however, because Serafin further alleges that on September 18, 2013, he reviewed his paystubs and discovered that his hours were still inaccurately low. SAC ¶ 95, ECF #71 ("For purposes of the statute of limitations, the cause of action for breach of fiduciary duty accrued when [Serafin] reviewed his paystubs . . . . on or about September 18, 2013."). It was upon discovering this discrepancy that Serafin obtained actual knowledge that OLEPTF failed to audit. Under the three-year "actual knowledge" limitations period, Serafin had until September 18, 2016, to file this claim. 29 U.S.C. § 1113(2). Since the six-year period expired earlier, it is the one the court

must apply.  *Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1423 (9th Cir. 1988).  As such, Serafin's January 2018 filing is untimely.

Citing *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1030 (9th Cir. 2006), Serafin asserts that OLEPTF's alleged failure to notify him of his benefits denial within 30 days is "a factor that militates strongly against a finding that the statute of limitations has begun to run against a claimant."  SAC ¶ 96, ECF #71.  In *Chuck*, the defendant-pension plan failed to provide adequate notice to the plaintiff-beneficiary about his benefits denial.  455 F.3d at 1032.  There, the adequacy of the denial notice was "highly relevant" because the statute of limitations could not accrue on the plaintiff's wrongful benefits denial claim until the plaintiff had a "reason to know that the denial was final."  *Id.* at 1033.  Here, unlike *Chuck*, there is no logical connection between OLEPTF's alleged failure to timely notify Serafin of his retroactive benefits denial in March 2008, and the entirely unrelated issue of OLEPTF's failure to audit Cascade General's payroll records over a year later when Serafin "submitted documents on September 22, 2009 showing that his reported pension hours statement was inaccurately low."  SAC ¶¶ 29, 93, ECF #71.

Finally, Serafin contends that "all checks sent to [him] in the last three years constitute an actionable basis for a valid ERISA claim."  Pl.'s Resp. 10, ECF #77.  Specifically, he argues that "[e]very pension check that was inaccurately low because [OLEPTF] failed to conduct an audit of Cascade General['s] reported hours constitutes an ERISA violation."  *Id.*  Serafin relies on *Meagher*, in which the plaintiff brought suit under 29 U.S.C. § 1132(a)(1)(B) when his benefits were decreased following an invalid amendment to the plan.  856 F.2d at 1422.  The Ninth Circuit held that "[e]ach check issued to [the plaintiff] in an amount reduced under the inoperative amendment constitutes a fresh breach by the trustees of their duty to administer the

pension plan in accordance with the documents and instruments of the Plan that are not inconsistent with ERISA," and "[a] separate cause of action arises with the issuance of each check, and the limitations period runs separately for each cause of action." *Id.* at 1423.

However, in *Ziegler,* the Ninth Circuit held that a breach of fiduciary claim is "readily distinguish[able]." *Id.*, 916 F.2d at 551. While "the *Meagher* cause of action entailed an ERISA provision specifically requiring an actual injury to the plaintiff, a reduction in benefits," a plaintiff bringing a breach of fiduciary duty claim "need never have suffered an actual harm for its ERISA cause of action to have accrued." *Id.* (citing 29 U.S.C. § 1054(g)). Therefore, accrual of the statute of limitations in the context of a breach of fiduciary is governed by 29 U.S.C. § 1113. *Id.* at 552. As discussed, Serafin's claim is time-barred under any of limitations periods described in 29 U.S.C. § 1113.

### B.     Earhart

Concerning Serafin's breach of fiduciary duty claim against Earhart, Serafin fails to allege facts establishing that Earhart is a fiduciary subject to 29 U.S.C. § 1109. Serafin does not allege that Earhart is either a named or functional fiduciary. *See* 29 U.S.C. § 1102(a)(2) & (21)(A). He simply asserts that Earhart is a plan fiduciary "to the extent it practically assumed any duties under the plan." Pl.'s Resp. 12-13, ECF #77. The duties Serafin cites, however, are administrative in nature and do not entail any of the discretionary or advisory functions contemplated by § 1002(21)(A). *See* SAC ¶ 91, ECF #71. Indeed, a plan administrator, such as Earhart, "who performs purely ministerial functions . . . for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary." 29 C.F.R. § 2509.75-8 D-2.

Serafin relies on *Mertens* for the proposition that "[t]here is an exception for entities that engage in knowing participation in fraud with plan fiduciaries." Pl.'s Resp. 12, ECF #77. However, as discussed previously, *Mertens* explicitly holds that ERISA does not authorize suits for money damages against non-fiduciaries even if they knowingly participate in a fiduciary's breach. 508 U.S. at 255. Here, Serafin seeks only money damages from Earhart. SAC 26-27, ECF #71. Because Serafin's allegations have no basis in law or fact, his breach of fiduciary duty claim against Earhart must be dismissed.

## VI.    Count 4

In Count 4, Serafin brings common law fraudulent and negligent misrepresentation claims, as well as an ERISA claim, against Local 737 based on the union's failure to respond to Serafin's request for information. SAC ¶ 101, ECF #71. Serafin alleges that shortly after he was terminated by Cascade General, on August 20, 2004, he filed a complaint with Local 737 asking for assistance obtaining wages, but Local 737 "failed to do so, and never informed him of his benefits." *Id.*

Even assuming Serafin's common law claims are not preempted by federal law, his claims are time-barred. Serafin's common law fraud and negligent misrepresentation claims are governed by Oregon's two-year statute of limitations and began accruing when Serafin discovered that Local 737 failed to assist him obtain, and inform him about, his disability benefits under the pension plan. O.R.S. § 12.110(1); *Gaston*, 318 Or. at 256; *Bodunov*, 214 Or. App. at 359. At the latest, Serafin discovered, or should have discovered, that Local 737 was failing to assist him when he had to apply for pension plan disability benefits in March 2008 without Local 737's help. SAC ¶ 29, ECF #71. Under the applicable two-year limitations period, Serafin would have had to bring his common law claims by March 2010 for them to be

timely. He did not do so and, therefore, his state law claims would be dismissed even if they were otherwise legally cognizable.

To the extent Serafin claims Local 737 violated ERISA by failing to respond to his request for benefit information, again this court applies the six-year statute of limitations for breach of contract under O.R.S. § 12.080(2). *See Stone*, 58 F.3d at 439 (holding that courts apply the most analogous statute of limitation under state law); *Chuck*, 455 F.3d at 1031 (holding that the most analogous law is O.R.S. § 12.080(1)). Under ERISA, "[a]ny administrator . . . who fails or refuses to comply with a request for any information [it is required to furnish] to a participant or beneficiary . . . by mailing the material requested . . . within 30 days after such request may in the court's discretion be personally liable[.]" 29 U.S.C. § 1132(c)(1). For purposes of deciding the current motion, the court assumes—but seriously doubts—that Local 737 is an "administrator" subject to the requirements of § 1132(c). *See* 29 U.S.C. § 1002(16)(A); SAC ¶ 9, ECF #71 ("The Pension Plan was administered by William C. Earhart Company"). Serafin alleges that he requested benefits information from Local 737 on August 20, 2004. SAC ¶ 101, ECF #71. Thus, the union needed to comply with Serafin's request by September 20, 2004—making September 21, 2004, the day the statute of limitations accrued on Serafin's claim. 29 U.S.C. § 1132(c). As such, Serafin was required to bring his claim by September 21, 2010 for it to be timely. His failure to do so requires his § 1132(c) claim against Local 737 be dismissed. *See* O.R.S. § 12.080(2).

Finally, to the extent Serafin alleges that Local 737 breached a fiduciary duty in violation of 29 U.S.C. § 1132(a)(3), Serafin concedes that Local 737 is not a fiduciary. SAC 24, ECF #71; Pl.'s Resp. 11, ECF #77. Moreover, even if such a claim could be brought against Local 737,

Serafin's claim based on events that occurred in 2004 would be time-barred.  *See* 29 U.S.C. § 1113.  Accordingly, the claims asserted in Count 4 are dismissed.

## VII.    Count 5

In Count 5, Serafin claims that after his claim for retroactive benefits was denied in March 2008, OLEPTF "failed to send a denial letter within 30 days as required by 29 U.S.C. § 1133."  SAC ¶ 104, ECF #71.  Serafin's claim must be dismissed for two reasons.  First, 29 U.S.C. § 1133 only requires that a beneficiary be given "adequate notice" and "a reasonable opportunity . . . for a full and fair review . . . of the decision denying the claim."  Contrary to Serafin's assertions, the statute does not contain a requirement that a benefits denial letter be sent within 30 days of the denial.  *See* 29 U.S.C. § 1133; *but cf.* 29 C.F.R. § 2560.503-1(f)(3) (imposing 45-day notice requirement for adverse disability claim determinations, with a 30-day extension available upon advance notice to claimant).

Moreover, even if such a 30-day requirement existed, Serafin's claim would be time-barred.  As discussed, an ERISA claim premised on a failure to provide information must be brought within six years.  O.R.S. § 12.080(2); *Stone*, 58 F.3d at 439.  At the latest, Serafin became aware that the benefit denial information was not sent within 30 days when he appealed that denial on June 24, 2008.  SAC ¶ 13, ECF #71; *see also Chuck*, 455 F.3d at 1033-34 (noting "'a plaintiff with actual knowledge of the right to bring a judicial action challenging the denial of her benefits may not rely on equitable tolling notwithstanding inadequate notice from her pension plan'") (quoting *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir.

2004)).  Under the applicable six-year statute of limitations, Serafin had until June 2014 to file

his claim.  He failed to do so; therefore, his claim must be dismissed.[4]

## VIII.  Attorneys' Fees

Cascade General and Earhart request attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).

Under 29 U.S.C. § 1132(g)(1), "a court in its discretion may award fees and costs of an action by

a plan participant to either party." *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir.

1980).  In exercising its discretion, a court should consider the following factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the
> opposing parties to satisfy an award of fees; (3) whether an award of fees against
> the opposing parties would deter others from acting under similar circumstances;
> (4) whether the parties requesting fees sought to benefit all participants and
> beneficiaries of an ERISA plan or to resolve a significant legal question regarding
> ERISA; and (5) the relative merits of the parties' positions.

*Id.* at 453.  No single factor is "necessarily decisive," and some may not be relevant in a given

case. *Carpenters S. California Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984).

The factors "very frequently suggest that attorney's fees should not be charged against ERISA

plaintiffs." *Id.* at 1416-17.  However, the analysis does not favor one side or the other—"the

playing field is level." *Estate of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 408 (9th

Cir. 1997).

With respect to the first factor, there is no evidence that Serafin acted in bad faith.  "[I]n

order to avoid a finding of bad faith under the *Hummell* factors, plaintiffs must have a reasonable

belief that they could prove an actionable ERISA claim." *Cline v. Indus. Maint. Eng'g &

Contracting Co.*, 200 F.3d 1223, 1236 (9th Cir. 2000).  Serafin brought this action only after

settlement negotiations broke down.  Earhart's settlement proposal, in which Earhart offered to

---

[4] Because the court's discussion herein disposes of Serafin's claims, the court declines to address
the additional arguments raised in defendants' motions and replies.  ECF ##72-75, 78-81.

backpay Serafin pension benefits from August 2005 through March 2008, supports a finding that Serafin had a reasonable belief he could prevail in this action.  ECF #1-8, at 7.  Further, "the 'culpability' of a losing plaintiff significantly differs from that of a losing defendant." *Marquardt v. N. Am. Car Corp.*, 652 F.2d 715, 720 (7th Cir. 1981); *see also Carpenters*, 726 F.2d at 1416 (indicating that the Seventh Circuit's analysis in *Marquardt* provides useful guidance in making an attorneys' fees determination in an ERISA action).  While "[a] losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate," an unsuccessful plaintiff "will not necessarily be found 'culpable,' but may be only in error or unable to prove his case."  *Marquardt*, 652 F.2d at 720.  Such is the case here.  Although Serafin's claims were mainly time-barred, his tolling arguments were not frivolous.  Accordingly, the first *Hummell* factor weighs against awarding attorneys' fees.

Second, Serafin's ability to satisfy a fee award is unlikely due to his limited, fixed income.  As discussed, Serafin has been found permanently disabled by the Social Security Administration; his ability to earn an income is highly doubtful.  Moreover, Serafin receives pension benefits in the amount of $720.57 per month.  His combined Social Security and pension benefits are likely crucial for meeting his basic living expenses.  ECF #1-8, at 7.  Under these circumstances, "it would be unjust to divert any limited income [Serafin] may earn from his disability benefits to the payment of attorneys' fees."  *Ross v. Excel Grp. Flexible Benefit Plan*, No. 2:06-CV-1474 JWS, 2009 WL 10708027, at *2 (D. Ariz. Aug. 18, 2009).  This factor therefore weighs against the award of fees.

The third factor—whether a fee award will deter others from acting under similar circumstances—is "more appropriate to a determination of whether to award fees to a plaintiff

than a defendant," *Tingey v. Pixley-Richards W., Inc.*, 958 F.2d 908, 910 (9th Cir. 1992) (citations omitted), and "generally will not justify an award of attorneys' fees to defendants." *Marquardt*, 652 F.2d at 721. Moreover, "it generally is sufficient that plaintiff bears his own attorneys' fees and costs to deter institution of a frivolous or baseless suit." *Id.* Here, although Serafin's claims were ultimately unsuccessful, the court cannot conclude that they were frivolous or baseless or that he acted in bad faith. Because there is no behavior to deter, this factor weighs against awarding fees.

"Like the third factor, consideration of the fourth factor is 'more appropriate to a determination of whether to award fees to a plaintiff than a defendant.'" *Ross,* 2009 WL 10708027, at *3 (quoting *Marquardt*, 652 F.2d at 719). As was the case in *Ross,* "this court does not see how the self-interest of an ERISA plaintiff weighs into a determination of whether to award fees to an ERISA defendant." *Id.*; *see also Carpenters*, 726 F.2d at 1416 (noting that some *Hummell* factors "may not be pertinent in a given case.") (citation omitted). Thus, this factor does not weigh in favor of awarding fees.

Finally, "in evaluating the fifth factor, the relative merits of the parties' positions, courts should be careful neither to penalize trustees for seeking to enforce employer obligations under ERISA nor to encourage employers to be indifferent to their obligations." *Carpenters*, 726 F.2d at 1416. Here, there is no question that defendants prevailed.

Thus, while the fifth factor favors a fee award, the vast majority of the *Hummell* factors weigh against awarding fees. Accordingly, the court exercises its discretion to decline to award attorneys' fees in this case.

**ORDER**

For the reasons stated above, defendants' Motions to Dismiss (ECF ##72-75) are

GRANTED, except that the request for attorney's fees is DENIED. Serafin's proposed

amendment would be futile; therefore, Serafin's request for leave to amend is DENIED.

Accordingly, this case is DISMISSED with prejudice, and judgment shall be issued to that effect.

IT IS SO ORDERED.

DATED  January 28, 2020.


_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge